UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TRICIA ANN MALLECK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:13-CV-164 JAR |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Tricia Malleck's ("Malleck")[1] application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*

### I. Background

On April 20, 2011, Malleck protectively filed applications for disability insurance under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* (Tr. 180-86), and for SSI benefits under Title XVI of the Act, 42 U.S.C. §§1381, *et seq.* (Tr. 187-193) In both applications, Malleck alleged disability beginning May 16, 2008. The Social Security Administration ("SSA") denied Malleck's claims on August 25, 2011. (Tr. 79-83) She filed a timely request for a hearing before an administrative law judge ("ALJ") on September 13, 2011. (Tr. 84-85) Following a hearing on June 21, 2012 (Tr. 29-75), the ALJ issued a written decision on September 25, 2012, upholding the denial of benefits. (Tr. 10-28) Malleck requested review of

---

[1] Tricia Malleck is also referred to in the administrative record as Tricia King.

the ALJ's decision by the Appeals Council. (Tr. 8-9) On September 13, 2013, the Appeals Council denied Malleck's request for review. (Tr. 1-7) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Malleck filed this appeal on November 8, 2013. (Doc. 2) The Commissioner filed an Answer. (Doc. No. 12) Malleck filed a Brief in Support of her Complaint. (Doc. No. 20) The Commissioner filed a Brief in Support of the Answer. (Doc. No. 25) Malleck did not file a Reply Brief.

**II.     Decision of the ALJ**

The ALJ determined that Malleck meets the insured status requirements of the Social Security Act through March 31, 2012,[2] and had not engaged in substantial gainful activity since May 16, 2008, the alleged onset date of disability. (Tr. 15) The ALJ found Malleck had the severe impairments of obstructive sleep apnea, chronic obstructive pulmonary disease, migraine headaches, asthma, diabetes mellitus and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-18)

After considering the entire record, the ALJ determined Malleck had the residual functional capacity ("RFC") to perform sedentary work, except she can lift and carry up to 10 pounds frequently and 20 pounds occasionally, stand or walk up to two hours in an eight-hour day, and sit up to six hours in an eight-hour day. Malleck may occasionally climb stairs, but she should never climb ladders, ropes or scaffolds. She can frequently balance, and occasionally stoop, crouch, kneel or crawl. She must avoid prolonged exposure to temperature extremes, chemicals, dusts, fumes and noxious odors, and she must avoid unprotected heights. In addition,

---

[2] To be entitled to disability benefits under Title II of the Act, Malleck must establish the onset of her disability prior to the expiration of her insured status on March 31, 2012. (Tr. 13) See 20 C.F.R. § 404.130.

secondary to reported chronic pain and medical conditions, Malleck is limited to jobs that do not require attention to detail or complicated job tasks and instructions. (Tr. 18)

The ALJ found Malleck has no past relevant work. (Tr. 22) She was 33 years old, defined as a younger individual aged 18-44, on the alleged disability onset date. (Id.) Malleck has a limited education and is able to communicate in English. Transferability of job skills is not an issue because she does not have past relevant work. Considering her age, education, work experience and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that she can perform, including an order clerk, blower/stuffer of toys, and film touch-up inspector. (Tr. 23) Thus, the ALJ concluded that Malleck had not been under a disability from the alleged onset date of May 16, 2008 through the date of his decision, September 25, 2012. (Id.)

### III.    Administrative Record

The following is a summary of the relevant evidence before the ALJ.

#### A.    Hearing Testimony

The ALJ held a hearing in this matter on June 21, 2012. The ALJ heard testimony from Malleck and James Adams, a vocational expert.

##### 1.    Malleck's testimony

Malleck was 37 years old at the time of the hearing and living with her ex-husband and their two children, ages ten and eight. (Tr. 36-37, 59) She completed the eleventh grade. (Tr. 37) She has a driver's license but only drives when she has to. (Tr. 38) Malleck testified that she hasn't worked since May of 2008. (Tr. 38)

In a typical month Malleck has migraines twice a week, lasting about half a day. (Tr. 39) She has been prescribed different medications, and it was her testimony that they help to a point.

3

(Tr. 40) When she has a headache she takes her medication and lays in bed in a dark room. (Tr. 40-41) She uses a CPAP machine at night for her sleep apnea and recently began using it during the day to help with her breathing problems. (Tr. 44-46)

Within the past three months Malleck started experiencing stomach pain two or three days a week. She referenced a diagnosis of sclerosing mesenteritis. (Tr. 41-42) A mass had been detected in her stomach and at the time of the hearing she was still undergoing testing. (Tr. 42)

Malleck testified that within the last month, any activity causes her to be short of breath. (Tr. 43, 64) On a bad night, she averages five hours of sleep; on a good night she averages eight hours. In either case, her sleep is interrupted. (Tr. 47) She usually has between two and four bad nights a week. (Tr. 48)

Malleck is able to control her diabetes and high blood pressure with medication and diet. (Tr. 49) Over the last two to three months, she has experienced swelling, or edema, in her hands and feet. She is on medication for this condition and her doctors are testing to determine the cause. (Tr. 50) It was Malleck's testimony that she has always had problems using the bathroom frequently and urgently, i.e., every 30-45 minutes. (Tr. 50-52) Her doctors think this condition is caused by edema. (Tr. 51) Malleck also suffers from seasonal allergies. (Tr. 52-53)

Malleck estimates that she can manage to carry a gallon of milk occasionally without aggravating her symptoms. (Tr. 53-54) She can reach occasionally most days and grasp and finger occasionally. (Tr. 55) She can walk about half of block before her sides start hurting. (Tr. 55-56) Then she needs to sit for about an hour to recover from that limited walking. (Tr. 56) She can stand for about 30 minutes and sit for less than that. (Tr. 56-57) Her symptoms interfere with her ability to focus and concentrate. If given a simple task to do for two hours at a time, Malleck says she would probably fall asleep. (Tr. 57) She could pay attention for about 45 minutes before

fatigue sets in. (Tr. 58) Her ex-husband has to remind her of appointments and when to take her medication. (Tr. 58-59)

Malleck's children do a lot of microwave cooking and help with the cleaning, dishes and laundry. Her ex-husband does the grocery shopping. (Tr. 60-61) Before he moved back in, Malleck's friends would help her with household chores. (Tr. 61)

Malleck testified she is seeking treatment for depression and anxiety. (Tr. 61-62) Her regular physician prescribed Cymbalta. (Tr. 62) She has been taking medication for depression or anxiety for a couple of years. (Id.) She has two to three bad days a week. (Tr. 63) She copes by lying on the couch and sleeping. (Id.) She isolates herself from others and can't motivate herself to do anything productive on those days. (Id.) Malleck hasn't seen a mental health professional except for counselor Sharon Head because she was hoping the medication would take care of it. (Tr. 65)

Malleck avoids crowds because being out around people in public causes anxiety even with medication. (Tr. 64) She doesn't attend church or other regular social gatherings and doesn't go to her children's school activities, sports, etc. (Tr. 64-66) It was her testimony that she recently changed medical providers because she has a lot of problems and wants some answers. (Tr. 65)

### 2. Testimony of Vocational Expert

The ALJ asked vocational expert, James Adams, to assume an individual of the claimant's age, education, and work history with the capacity to lift twenty pounds occasionally and ten pounds frequently, to walk or stand no more than two hours out of an eight hour day and to sit for six hours out of an eight hour day. The individual can occasionally climb stairs but should never climb ropes, scaffolds, or ladders. The individual can frequently balance,

5

occasionally stoop, crouch, kneel and crawl, and must avoid prolonged exposure to temperature extremes, chemicals, dust, fumes and noxious odors, as well as unprotected heights. The ALJ further limited the individual to jobs that do not demand attention to details or complicated job tasks or instructions. (Tr. 69-70) Adams opined that such an individual should be able to work as an order clerk, DOT (Dictionary of Occupational Titles) number 209.567-014, with 211,370 such jobs available nationwide and 950 locally. (Tr. 70-71) This is sedentary, unskilled work. (Tr. 71) Adams further opined that such an individual should also be able to function as a blower, or stuffer of toys, DOT number 731.685-014, with 342,208 such jobs nationwide and 500 locally. (Id.) This is also sedentary, unskilled work. Such an individual should also be able to perform work as a film touchup inspector, DOT number 726.682-050, with 22,127 such jobs nationwide and 500 locally, also sedentary and unskilled. (Id.)

For the second hypothetical, the ALJ asked Adams to assume the same limitations from the first hypothetical with the following additional limitation: occasional reaching, handling and fingering, and secondary to her chronic medical conditions, difficulty maintaining acceptable levels of punctuality and attendance and missing one or two days a week. (Tr. 72) Adams concluded the individual could not do those jobs, or any other jobs. (Id.)

Upon examination by Malleck's counsel, Adams stated that considered separately, the additional restriction on manipulative function would rule out work since unskilled work requires good balance or manual dexterity. (Id.) Issues regarding attendance would rule out all work as well. (Tr. 73) Counsel asked Adams to assume a hypothetical individual whose ability to focus and concentrate was impaired to such an extent that she would be unable to sustain attention to a simple task for a two hour period before being distracted and requiring daily reminders regarding recurring daily activities. According to Adams, such a person could not do competitive work.

6

(Tr. 73-74) Adams further testified that missing work more than twice a month jeopardizes the job. (Tr. 74)

## B.    Medical Records

The ALJ summarized Malleck's medical records at Tr. 19-22. Relevant medical records are discussed as part of the analysis.

## IV.    Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at * 2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or

combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the

8

burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

      (1) The findings of credibility made by the ALJ;
      (2) The education, background, work history, and age of the claimant;
      (3) The medical evidence given by the claimant's treating physicians;
      (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
      (5) The corroboration by third parties of the claimant's physical impairment;
      (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
      (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

**V.    Discussion**

In her appeal of the Commissioner's decision, Malleck raises three issues. First, she alleges the ALJ's RFC is erroneous because it is not well-supported by the required "narrative discussion" requirement of Social Security Ruling 96–8p. (Doc. No. 20 at 10-12) Second, Malleck argues the ALJ exaggerated the nature and extent of her daily activities and misconstrued the vocational significance of these activities. (Id. at 12-13) Third, Malleck contends the ALJ failed to fully and fairly develop the record, ignoring an explicit request to assist her in obtaining necessary medical records. (Id. at 14-15)

### 1. Sufficiency of narrative discussion

Social Security Ruling 96–8p requires the ALJ to include in the decision "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." In addition, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p. Malleck acknowledges that the ALJ provided a function-by-function RFC assessment as required by the regulations; however, she contends the decision lacks a "narrative discussion" clearly identifying the evidence of record that supports the ALJ's specific conclusions regarding functional capacity together with an explanation of how that evidence supports the conclusions reached. (Doc. No. 20 at 10)

Before addressing Malleck's argument, it is important to note that this Court reviews for substance over form: "an arguable deficiency in opinion-writing technique does not require the court to set aside an administrative finding when that deficiency had no bearing on the outcome." Farringer v. Colvin, 969 F.Supp.2d 1144, 1155–56 (D.Neb. 2013) (quoting Buckner v. Astrue, 646 F.3d 549, 559 (8th Cir.2011)).

An ALJ need not provide a narrative discussion immediately following each statement of an individual limitation in the RFC, if the Court can otherwise discern the elements of the ALJ's decision-making. Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003). Moreover, the ALJ is not required to make explicit findings for every aspect of the RFC, just for the conclusion reached. Social Security Ruling 96–8p. See also, Tawfall v. Astrue, 2010 WL 3781807, at *10 (E.D.Mo. Sept. 21, 2010).

In his opinion, the ALJ discussed Malleck's medical history of migraine headaches (Tr. 341, 462-63, 552), type II diabetes mellitus and high blood sugars (Tr. 431, 499), asthma, chronic obstructive pulmonary disease (Tr. 568), and obstructive sleep apnea. (Tr. 341) He set out his conclusions regarding Malleck's limitations, explained why he found certain items of medical evidence in the record more persuasive than others, and discussed what evidence was lacking. (Tr. 18-22) Furthermore, while a claimant's RFC is a medical question, an ALJ is not limited to considering medical evidence exclusively. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir.2000). In this case, the ALJ properly considered Malleck's history of treatment noncompliance (Tr. 19-21, 363-64, 369-70, 376, 397, 530), self-reported activities of daily living (Tr. 17, 254-269), and her inconsistent earnings record. (Tr. 21, 224-25) In addition, the ALJ noted the lack of objective evidence to support the degree of limitation Malleck alleged (Tr. 20-21, 224-25, 341, 343, 363, 370, 377, 385, 391, 432, 446-47, 500, 508, 514, 522, 524, 545, 552-57), as well as the lack of restrictions imposed on Malleck by her treating doctors. (Tr. 21, 364, 370, 377)

The ALJ also considered the opinions of the state agency medical consultants, Elissa Lewis, Ph.D., and Anne Winkler, M.D., and gave them both significant weight. (Tr. 21-22) Dr. Lewis opined that Malleck has no severe mental impairment. (Tr. 21) The ALJ found this

11

opinion consistent with Malleck's medical records, which show she does not require specialized mental health treatment on a routine or emergency basis. (Id.)

Dr. Winkler opined that Malleck has only minimal limitations due to her documented health problems and could frequently lift 50 pounds and sit, stand and walk up to eight hours in an eight-hour day. (Id.) In addition, it was Dr. Winkler's opinion that Malleck is not limited in the use of her hands or feet, can frequently climb ramps and stairs and balance, stoop, kneel, crouch and crawl. She can never climb ladders, ropes or scaffolds and must avoid unprotected heights, and more than frequent exposure to hazards, pulmonary irritants, dust, fumes, odors and noise. (Tr. 22) The ALJ found this opinion consistent with Malleck's medical records, which show she has not been given restrictions on her activities by her treating physicians; however, the ALJ further reduced Malleck's functional abilities in consideration of her subjective complaints. (Tr. 22)

In summary, the ALJ discussed the relevant medical and nonmedical evidence, why he believed it contradicted Malleck's allegations of disabling impairment, and explained how he determined her RFC assessment. This narrative bridge to the RFC determination is more than adequate. Crabtree v. Colvin, 2014 WL 6977779, at *6-7 (E.D.Mo. Dec. 9, 2014); Jones v. Astrue, 2011 WL 4445825, at *9-10 (E.D.Mo. Sept. 26, 2011).

### 2. Daily activities

Malleck argues the ALJ erred in his credibility evaluation and RFC determination by failing to acknowledge her challenges and restrictions when she performs or attempts to perform her daily activities. (Doc. No. 20 at 12-13) In his decision, the ALJ found the record suggests Malleck may be more active than she would project. Specifically, she is able to participate in the

care of her young children, shop, drive, cook, watch television and care for her dog. She was also able to travel to California for a week the previous year. (Tr. 21)

To be sure, there are cases in which a claimant's ability to engage in certain personal activities "does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." Ponder v. Colvin, 770 F.3d 1190, 1196-96 (8th Cir. 2014) (citing Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). But that is not the case where, as here, Malleck's treating doctors never restricted her activity and actually advised her to increase her activity and exercise to help her condition. (Tr. 21, 370, 377) The ALJ reasonably considered activities of daily living in determining Plaintiff's RFC.

Moreover, Malleck's daily activity was just one of several factors the ALJ considered in assessing her credibility and determining her RFC. The ALJ also considered the lack of objective evidence to support the degree of limitation alleged (Tr. 20, 341, 343; 363, 370, 377, 385, 391, 432, 446-47, 500, 508, 514, 522, 524, 545, 552-57), the effectiveness of Malleck's treatment measures when she was compliant with treatment (Tr. 19-21, 341-43, 363-64, 376, 431, 446, 499-500), her lack of compliance with recommended treatment (Tr. 19-21, 363-64, 369-70, 377, 397, 432, 530), the lack of restrictions imposed on Plaintiff by her treating doctors (Tr. 21, 364, 370, 377), her erratic and inconsistent earnings record (Tr. 21, 224-25), and the opinion of the state agency medical consultants. (Tr. 21-22, 450-60, 527-37)

The ALJ considered Malleck's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from her credibility. Because the ALJ's determination not to credit Malleck's subjective complaints is supported by good reasons and substantial evidence, the Court defers to his determination. Cobb v. Colvin, 2014 WL 6845850,

at *14 (E.D.Mo. Dec. 3, 2014) (internal citations omitted). See also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984).

### 3. Development of the record

Finally, Malleck argues the ALJ failed to assist her in obtaining treatment records from her primary care clinic from March 1, 2012 to the present, and that this failure to fully develop the record requires remand to further develop the evidence. (Doc. No. 20 at 14-15) She points specifically to a letter from her counsel to the ALJ dated September 6, 2012 summarizing his efforts to obtain records from McVickers Family Healthcare, providing a medical release to the ALJ, and requesting the ALJ subpoena the records from the provider.[3] (Tr. 330) In this letter, counsel states "[w]e believe these records are important evidence in support of claimant's case." (Id.)

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability even where, as here, the claimant is represented by counsel. Wheeler v. Colvin, 2014 WL 1212700, at *16 (E.D.Mo. Mar. 21, 2014). The ALJ is required to develop a complete medical history for the claimant for at least the twelve months preceding the month in which the claimant's application was filed before making a determination. 20 C.F.R. §§ 404.1512(d), 416.912(d). A complete medical history includes the records of the claimant's

---

[3] Section I-2-5-78 of the Social Security Administration's Hearings, Appeals, and Litigation Manual (HALLEX) sets forth the procedure for requesting the issuance of a subpoena from the ALJ. Under HALLEX, the claimant must provide: (1) the names and addresses of the witness/documents to be requested; (2) a statement of the important facts that the documents are expected to provide; and (3) the reason why these facts cannot be proven without issuing a subpoena. A subpoena may then issue if: (1) the claimant has shown that an individual has evidence that the claimant cannot obtain without the subpoenas; (2) the ALJ determines that the evidence is reasonably necessary for the full presentation of the case; and (3) the ALJ has exhausted other means of obtaining this evidence. The Court notes, however, that HALLEX does not impose judicially enforceable duties upon the parties, but rather is strictly an internal Agency manual with no legal effect on the Administration or this Court. Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir.2008); Moore v. Apfel, 216 F.3d 864, 868–69 (9th Cir.2000).

medical source covering at least the 12 months preceding the month in which the application is filed. 20 C.F.R. §§ 404.1512(d)(2), 416.912(d)(2).

"There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994). A claimant for disability benefits has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability and how the impairment affects the claimant's functioning. 20 C.F.R. §§ 404.1512(c), 416.912(c); Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (holding that the burden of persuasion to prove disability and demonstrate RFC remains on the claimant). "An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). Furthermore, "reversal due to failure to develop the record is only warranted where such failure is unfair and prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995).

Based on the evidence in the record as a whole, the Court finds no unfairness or prejudice. First, the record contains extensive medical evidence from examining, treating and reviewing sources. (Tr. 335-624) This evidence provided a sufficient basis for the ALJ's decision and there was no indication that additional medical records were necessary. Second, Malleck does not explain what these additional medical records would show or how they would have affected the outcome of the disability determination, which weighs against a finding of prejudice that would warrant reversal. Wheeler, 2014 WL 1212700, at *17. See also, Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) (refusing to remand based on failure to develop the record

15

regarding missing records; reasoning in part that "the substance of [the plaintiff's] alleged other medical visits is unclear at best" and that the plaintiff "has not indicated that those visits should be regarded as dispositive for purposes of his claim"); Owens v. Barnhart, 109 F. App'x 825, 827 (8th Cir.2004) (refusing to remand for failure to develop the record regarding missing records; reasoning in part that the plaintiff had not explained the legal significance of the records).

Because the ALJ adequately developed the evidence in this case, the lack of any additional records from Malleck's clinic does not provide a basis to remand this case for further development and consideration.

### VI. Conclusion

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 30th day of March, 2015.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE